(94 South. 356)

## CREIGHTON v. AIR NITRATES CORPORATION.   (8 Div. 474.)

(Supreme Court of Alabama.   Oct. 26, 1922.)

1. **Principal and agent** ⊜⇒136(2)—**Liability of agent personally for services known to be for sole benefit of principal.**

An agent will not be personally liable for services under an express or implied contract, if, when the contract was entered into, the relation of principal and agent was disclosed to the one furnishing the services, and such services were rendered for the sole benefit of the principal, and the contract was within the scope of the authority of the agent, unless it is then shown that the agent was looked to expressly and exclusively for compensation, and it was clearly the intention of the agent to assume a personal responsibility for it.

2. **Principal and agent** ⊜⇒190(1)—**Shifting of burden of proof in action to hold agent personally.**

When the plaintiff makes out a prima facie case of liability against the defendant, the burden then shifts to the defendant to show that, when the contract was made by defendant with plaintiff for the work, plaintiff knew, or was informed, that defendant was acting as agent for another in making the contract, that the contract made was within the scope of the authority of the agent, and that the work done under it by plaintiff was for the sole benefit of the principal, and when this is shown by the defendant, the burden of proof shifts to the plaintiff to show that the credit for the work done was given exclusively to the defendant, the agent, that the agent was at the time of the making of the contract informed of that fact, and defendant intended to give his own personal engagement for the work to be done by the plaintiff.

3. **Pleading** ⊜⇒207—**Demurrer must specify defect or insufficiency of plea.**

A demurrer to a plea must specify the defect or its insufficiency, and when it does not do so, it is properly overruled.

4. **Pleading** ⊜⇒208—**Demurrers to pleas held too general.**

In an action against the Air Nitrates Corporation to recover for services, assignments of demurrers to pleas to the effect that defendant was acting solely and purely as agent of the United States for the purpose of carrying out a governmental function *held* either

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[3] Ante, p. 165.

too general or to fail to specify defects in, or the insufficiency of, the pleas, under Code 1907, § 5340.

Appeal from Circuit Court, Franklin County; Charles P. Almon, Judge.

Action for work and labor by Robert W. Creighton against Air Nitrates Corporation. After adverse ruling on the pleadings plaintiff took a nonsuit and appeals. Affirmed.

William L. Chenault, of Russellville, for appellant.

The court having overruled plaintiff's demurrers to defendant's pleas, the proper action of plaintiff was to take a nonsuit. 14 Ala. App. 445, 70 South. 297; 184 Ala. 272, 63 South. 567. Defendant's pleas were subject to plaintiff's demurrers. The case of Webb v. White Eng. Corp., 204 Ala. 429, 85 South. 729, if applicable to this case, should be overruled. 256 Fed. 768, 168 C. C. A. 114.

Andrews & Peach, of Sheffield, for appellee.

If the pleas were defective, the objections should have been pointed out by appropriate demurrers; the general demurrers of plaintiff were not sufficient. Code 1907, § 5340; 155 Ala. 368, 46 South. 484. The demurrers admit the allegations of the plea. If the suit is in legal effect against the United States, and is brought without the consent of the government, it cannot be maintained. 205 Ala. 268, 87 South. 602. Employees of the Air Nitrates Corporation were civil employees of the United States within the contemplation of the federal Employees' Compensation Act. 204 Ala. 192, 85 South. 727. There is no distinction between suits directly against the government and those against its property. 205 Ala. 355, 87 South. 603, 13 A. L. R. 1020.

MILLER, J. Robert W. Creighton, the appellant, sues the Air Nitrates Corporation, a corporation, the appellee, under the common counts, for work and labor done by him for it.

The defendant filed 13 pleas; the plaintiff demurred to each; these demurrers were all overruled by the court; the plaintiff took a nonsuit on account of the adverse rulings of the court to him on the pleadings. The court granted the nonsuit, entered judgment dismissing the case and taxing plaintiff with the court cost. This appeal is prosecuted from that judgment by the plaintiff; and the judgment of the court sustaining the demurrers to each plea are the errors assigned. Two of the pleas, 1a and 2a, are the general issue. The other 11 pleas are special. These special pleas challenge the jurisdiction of the court, and are in bar of the prosecution of the suit. They aver in various forms and terms that plaintiff was an employé of the United States, and not of the defendant; that the defendant was acting solely and purely as agent of the United States for the purpose of carrying out a governmental function; it had no interest in the plant or quarry where plaintiff worked; the wages and salaries were paid the employés by the United States through the defendant as its agent. Of all these pleas, that one lettered (d) states fairly the special defense as follows:

"(d) The suit in this case is in effect a suit against the United States, and is brought without its consent, and this court is without jurisdiction to determine the same for the reason that the work and labor alleged to have been done for the defendant, and the service alleged to have been rendered for it, were rendered in and about the construction of a nitrate plant for the production of nitrates or other products needed for munitions of war and useful in the manufacture of fertilizer and other useful products, and the said quarry was being operated under an act of Congress of June 3, 1916, which is as follows: 'The President of the United States is hereby authorized and empowered to make, or cause to be made, such investigation as in his judgment is necessary to determine the best, cheapest, and most available means for the production of nitrates and other products for munitions of war and useful in the manufacture of fertilizers and other useful products by water power or any other power as in his judgment is the best and cheapest to use; and is also hereby authorized and empowered to designate for the exclusive use of the United States, if in his judgment such means is best and cheapest, such site or sites, upon any navigable or nonnavigable river or rivers or upon the public lands, as in his opinion will be necessary for carrying out the purposes of this act; and is further authorized to construct, maintain and operate, at or on any site or sites so designated, dams, locks, improvements to navigation, power houses and other plants and equipment or other means than water power, as in his judgment is the best and cheapest, necessary or convenient for the generation of electrical or other power and for the production of nitrates or other products needed for munitions of war and useful in the manufacture of fertilizers and other useful products. The President is authorized to lease, purchase, or acquire by condemnation, gift, grant, or devise, such lands and rights of way as may be necessary for the construction and operation of said plant, and to take from any lands of the United States, or to purchase or acquire by condemnation, materials, minerals and processes, patented or otherwise, necessary for the construction and operation of such plants and for the manufacture of such products. The products of such plants shall be used by the President for military and naval purposes to the extent that he may deem necessary, and any surplus which he shall determine is not required shall be sold and disposed of by him under such regulations as he may prescribe. The President is hereby authorized and empowered to employ such officers, agents, or agencies as may in his discretion be necessary to enable him to carry out the purpose herein specified, and to authorize and require such officers, agents, or agencies to

perform any and all of the duties imposed upon him by the provisions hereof. The sum of twenty million dollars is hereby appropriated, out of any moneys in the treasury, not otherwise appropriated, available until expended, to enable the President of the United States to carry out the purposes herein provided for. The plant or plants provided for under this act shall be constructed and operated solely by the government and not in conjunction with any other industry or enterprise carried on by private capital.' Under the authority of the act above set out, the President of the United States designated the defendant, Air Nitrates Corporation, as the agent, or agency necessary to enable him to carry out the purpose specified in the said act, at the cost of the United States, and defendant alleges services rendered by the plaintiff in this case were rendered to a government agency in the carrying out of its obligations under such designations of the President and any obligation to pay for such services was and is the obligation of the United States."

The federal Employés' Compensation Commission has decided, under "the agency contract" made with the defendant for the construction of a plant at Muscle Shoals, Ala., that the employés of the corporation itself engaged in the work at Muscle Shoals are civil employés of the United States, and entitled to the benefits of the Compensation Act. A copy of the order and decision appears in Webb v. White Engineering Corp., 204 Ala. 429, 85 South. 729.

This is a suit ex contractu. The plaintiff avers in substance that the work was done by him for the defendant, under an express or implied contract. The defendant seeks to avoid liability by averring it was acting as agent for the United States in making the contract; that it was simply an agent in the transaction, and the United States was principal; and that its principal is not subject to be sued in this court. We find no averment in any plea that the stock of the defendant corporation is owned in whole or in part by the United States. We find no averment that the defendant's property is owned by the United States. It does not appear to whom the defendant's corporation belongs. The defendant is a corporation; it is a separate entity; and we do not know who are the owners of its stock or property. The cases of Ala. G. I. School v. Reynolds, 143 Ala. 579, 42 South. 114; White v. Board of Trustees Insane Hosp., 138 Ala. 479, 35 South. 454; Cox v. Board of Trustees of University of Ala., 161 Ala. 639, 49 South. 814, cited by appellee, can have no bearing on this subject. These institutions and their property belong to the state of Alabama; and an action against either is substantially an action against the state of Alabama.

We know from the pleas under demurrers, which confess them, that the defendant is a corporation acting as the agent of the United States, under an agency contract, for the performance of the work at Muscle Shoals for the United States, indicated by the pleas. It appears from these pleas that the agent, the defendant, is being sued personally by the plaintiff for debts of its principal, the United States, contracted for by the defendant as agent for its principal. Can the defendant, the agent, be made liable for the debt of his principal? If so, when? These questions have been answered by our court affirmatively. Justice Coleman, in Humes v. Decatur Land Imp., etc., Co., 98 Ala. 461, 13 South. 368, wrote:

"Contracts may be expressed or implied, or partly expressed and in part implied. One who employs another to perform certain services for his benefit, without an agreement as to terms, impliedly agrees to pay reasonable compensation for the services. If the person contracting for the services of another is known to be an agent duly authorized to contract for his principal, and the services to be performed are wholly for the benefit of his principal, and this is fully explained to the person employed, and there is nothing said about the price to be paid, or who was to be liable, and the principal knew that the services were being rendered and assented thereto, the law implies an obligation on the part of the principal the consideration moving to him to pay what is right. To hold an agent personally liable, in cases in which he discloses his principal, and that the services to be rendered are for the sole benefit of his principal, and the contract is within the scope of his authority, it must be shown that credit was given exclusively to the agent, and that the agent was informed of that fact. Amer. Ld. Cases Col. 1, pp. 628, 638; Story on Con. §§ 145, 146, 160a, 279; 1 Wait's Actions, pp. 237, 256."

Then in Anderson v. Timberlake, 114 Ala. 386, 22 South. 433, 62 Am. St. Rep. 105, Chief Justice Brickell wrote and quoted approvingly as follows:

"In 1 Am. Lead. Cas. (5th Ed.) 764, speaking in reference to verbal contracts made by or through an agent, it is said: 'That when the relation of principal and agent exists in reference to a contract, and is known to the other party to exist, and the principal is disclosed at the time as such, the contract is the contract of the principal, and the agent is not bound, unless credit has been given to him expressly and exclusively, and it was clearly his intention to assume a personal responsibility; but, if credit was given to him exclusively, and he intended to give his own personal engagement, he will be bound; and this, upon sufficient evidence, is a question for the jury on all the circumstances of the case.'"

The opinion then quotes from Humes v. Decatur Land, etc., Co., 98 Ala. 461, 13 South. 368. See, also, Bell v. Teague, 85 Ala. 211, 3 South. 861; Drake v. Flewellen, 33 Ala. 106.

[1, 2] The defendant will not be personally liable for this alleged debt due plaintiff, if, when the express or implied contract for the work was made by defendant with plaintiff, the relation, that defendant was agent and

the United States was the principal in the contract, was disclosed to the plaintiff; and if the services rendered were for the sole benefit of the United States; and if the contract for the services was within the scope of the authority of the defendant; unless it is then shown by the plaintiff that he looked to the defendant expressly and exclusively for his remuneration, and it was clearly the intention of the defendant to assume a personal responsibility for it. When the plaintiff makes out a prima facie case of liability against the defendant, the burden then shifts to the defendant to show that when the contract was made by defendant with plaintiff for the work, the plaintiff knew or was informed that defendant was acting as agent for the United States in making the contract; that the contract made was within the scope of the authority of the defendant from the United States; and that the work done under it by plaintiff was for the sole benefit of the United States. When this is shown by the defendant, the burden of proof shifts to the plaintiff to show that the credit for the work done was given exclusively to the defendant, the agent; that the agent was at the time of the making of the contract informed of that fact, and defendant intended to give his own personal engagement for the work to be done by the plaintiff. Anderson v. Timberlake, 114 Ala. 386, 22 South. 431, 62 Am. St. Rep. 105; Humes v. Decatur Land Imp., etc., Co., 98 Ala. 461, 13 South. 368.

Many, if not all, of these special pleas do not measure up to the foregoing rule. Many, if not all, of them contain defects and are insufficient. These necessary averments do not appear in all of them. Some pleas do not aver plaintiff knew or was informed when the contract was made with defendant that the United States was the principal in the contract, and the defendant was only its agent; other pleas fail to aver the contract made by defendant with plaintiff was within the scope of its authority from the United States; and some pleas fail to aver the work done by the plaintiff was for the sole benefit of the United States. These defects are not specified, not pointed out by the demurrer. The grounds of demurrer assigned to each plea are as follows:

"(1) Same is no answer to the complaint.
"(2) No permission was necessary from the ordinance department to file this suit.
"(3) Because the pleading shows that the defendant is a separate corporation, and not a part of the government.
"(4) The allegation that the defendant was an agent of the government is a conclusion of the pleader.
"(5) No facts are set up or shown which would defeat the recovery of this plaintiff against the defendant.
"(7) That the defendant is a government agency is no defense."

[3, 4] The demurrer must specify the defect in or insufficiency of the plea. No objection can be taken or allowed to a plea which is not distinctly stated in the demurrer. When the demurrer does not specify the objections to the plea, it is properly overruled by the court. General assignments of demurrer should be overruled by the court. These grounds of this demurrer were either too general, or failed to specify the defects in or the insufficiency of the pleas; and the court did not err in overruling them. Section 5340, Code 1907: Milligan v. Pollard, 112 Ala. 465, 20 South. 620; Wikle v. Johnson Lab., 132 Ala. 268, 31 South. 715; Bryant v. A. G. S. R. Co., 155 Ala. 368, 46 South. 484.

Finding no error in the record, the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.